In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00082-CV

                                                ______________________________

 

 

                   GLORIA LOPEZ-JUAREZ, INDIVIDUALLY
AND AS

EXECUTRIX OF THE ESTATE OF
ALEJANDRO JUAREZ,

DECEASED, AND AS NEXT
FRIEND OF

GLORIA ALEJANDRA JUAREZ,
Appellant

 

                                                                V.

 

                        HUEY KELLY, D/B/A KELLY TOURS, Appellee

 

 

                                                                                                  


 

 

                                            On Appeal from the County
Court at Law

                                                             Gregg County, Texas

                                                   Trial Court No. 2006-1055-CCL2

 

                                                                                                  


 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                          Opinion by Justice Carter








                                                                   O P I N I O N

 

            Alejandro
Juarez was traveling westbound on Interstate 20 in Gregg County when his
vehicle was rear-ended by a vehicle driven by Michael A. Weisheit.[1]  Juarez’s vehicle careened to the left side of
the median into the left eastbound lane of Interstate 20.  Juarez, though, did not suffer any fatal or
catastrophic injuries from the initial collision.  Juarez’s vehicle was then struck by an
eastbound tour bus owned by Huey Kelly, d/b/a Kelly Tours, and being driven by
Andrew Johnson, an employee of Kelly Tours.[2]  Juarez died as a result of this second
collision.  

            Juarez’s
wife, Gloria Lopez-Juarez brought suit against Ford Motor Company, Huey Kelly,
d/b/a Kelly Tours, Michael A. Weisheit, and Beverly Woolsey Goble,
individually, as executrix of Juarez’s estate, and as next friend of Gloria
Alejandra Juarez, Juarez’s daughter. 
Only the allegations against Huey Kelly, d/b/a Kelly Tours (Kelly Tours)
proceeded to trial.  Lopez-Juarez’s suit,
under the Texas Wrongful Death Statute and Texas Survival Statute, alleged
negligence, negligence per se, gross negligence, negligent entrustment, and
negligent hiring.  The trial court
admitted, over objection, the opinion testimony of Trooper Colby Hobbs, a
police officer who investigated the accident. 
The trial court denied the requested instruction on negligence per se.[3]  The jury found Weisheit solely responsible
for the accident.  The trial court
granted judgment in favor of Kelly Tours.

            Lopez-Juarez
raises two issues on appeal.  She argues
the trial court erred in admitting the expert testimony of Hobbs and erred in
denying the instruction on negligence per se. 
Kelly raises a counter-issue that Lopez-Juarez failed to request the
appropriate relief in her appellant’s brief. 
We conclude that Lopez-Juarez could amend the relief originally
requested in her appellant’s brief.  We
also conclude the trial court abused its discretion in admitting the opinion
testimony of Hobbs concerning causation and negligence because, under the facts
of this case, Hobbs lacked the qualifications to testify as an expert.  However, we affirm the judgment of the trial
court because the error did not result in reversible error and the trial court
did not err in denying the requested instruction on negligence per se.  

I.          Requested Relief May
Be Amended

            In
her appellant’s brief, Lopez-Juarez requests “that this court reverse and
render judgment for her damages and attorney fees.”  In his appellee’s brief, Kelly argues this
error prevents this Court from granting relief. 
Kelly also argues that Lopez-Juarez cannot amend her brief or request a
remand in a reply brief.  Lopez-Juarez
has filed a motion requesting leave to file an amended brief, which requests a
remand, and has requested a remand in her reply brief.  Kelly has filed a response to the motion to
amend objecting to Lopez-Juarez’s request.

            The
appropriate relief for both issues raised by Lopez-Juarez would be a
remand.  If the admission of Hobbs’ testimony
is reversible error, the appropriate relief would be a reversal and remand for
new trial.  See, e.g., In re Estate of
Arndt, 187 S.W.3d 84, 88 (Tex. App.—Beaumont 2005, no pet.).  If the trial court committed reversible error
in denying the requested instruction on negligence per se, the appropriate
relief would be a reversal and remand for a new trial.  See,
e.g., Crown Life Ins. Co. v. Casteel,
22 S.W.3d 378, 390 (Tex. 2000).  A court
should not grant relief which has not been requested by the prevailing
party.  Horrocks v. Tex. Dep’t of Transp., 852 S.W.2d 498, 499 (Tex. 1993);
In re Estate of Wilson, 252 S.W.3d
708, 715 (Tex. App.—Texarkana 2008, no pet.). 
When a party has only requested rendition, but the appropriate relief
for a party’s issue is a remand for a new trial, an appellate court cannot
grant a new trial.  Stevens v. Nat’l Educ. Ctrs.,
Inc., 11 S.W.3d 185, 186 (Tex. 2000); W.
End API, Ltd. v. Rothpletz, 732
S.W.2d 371, 374 (Tex. App.—Dallas 1987, writ ref’d n.r.e.).

            The
Texas Rules of Appellate Procedure provide that a brief “may be amended or
supplemented whenever justice requires, on whatever reasonable terms the court
may prescribe.”  Tex. R. App. P. 38.7. 
The sole change in the amended brief is that Lopez-Juarez is now
requesting a remand.  Kelly argued in the
appellee’s brief that the appellant’s brief cannot be amended, citing seventeen
cases which hold new issues cannot be raised in a reply brief.[4]
In his response, Kelly argues justice does not require amendment and argues he
has been prejudiced because he has spent time briefing the issue.

            The
cases relied upon by Kelly are distinguishable because these cases concern new
issues, not new prayers.  A prayer is a
formality—albeit an important formality. 
The Austin Court of Appeals has considered this exact issue and
concluded the prayer could be amended.  See Majeed v. Hussain, No.
03-08-00679-CV, 2010 Tex. App. LEXIS 8477 (Tex. App.—Austin Oct. 22, 2010, no
pet.) (mem. op.) (concluding failure to request appropriate relief could be
cured).  The Austin court reasoned the
prayer could be amended because the rules provide briefs can be amended,[5]
briefing requirements should be construed “liberally” and “substantial
compliance” is sufficient,[6]
Rule 43.3 instructs appellate courts, “[w]hen reversing a trial court’s
judgment,” to “render the judgment that the trial court should have rendered,
except when:  (a) a remand is necessary
for further proceedings; or (b) the interests of justice require a remand for a
new trial,”[7]
and the rules contemplate that appellate courts afford parties the opportunity
to cure any formal or substantive briefing defects before disposing of the
appeal based on such a defect rather than the merits.[8]  

            We
agree with the Austin Court of Appeals that a prayer can be amended.  We grant Lopez-Juarez’s motion for leave to
amend her appellant’s brief and overrule Kelly’s counter-issue.

II.        Hobbs’ Opinion
Testimony as Expert Testimony

            Lopez-Juarez’s
first issue challenges the admissibility of Hobbs’ testimony concerning the
causation of the accident.  Lopez-Juarez
argues Hobbs was not qualified[9]
to testify as an expert on accident causation and the error in admitting Hobbs’
testimony was reversible error.

            Prior
to trial, Lopez-Juarez filed a trial brief challenging the admissibility of
Hobbs’ testimony.  Lopez-Juarez argued
Hobbs was “not qualified to offer lay or expert testimony as to any opinions
regarding the accident.”  Outside the
presence of the jury, Lopez-Juarez objected to the admissibility of Hobbs’
testimony and obtained a ruling.  See Tex.
R. Evid. 103.  The trial court
sustained Lopez-Juarez’s objection in part and restricted Hobbs’ testimony to
opinions unrelated to vehicle speed.  The
trial court, however, overruled the remainder of Lopez-Juarez’s objection and
held that Hobbs’ testimony as to causation was admissible.  The trial court stated,

            I
have read the case law, read the complete deposition of Trooper Hobbs.  Case law indicates that somebody with Trooper
Hobbs’ training, and he does -- while he does limit it at first, he later talks
about over the numerous accidents and fatality accidents he’s investigated in
his career, starting in Bay City and also with training through the Smith
County Sheriff’s Department.

            Based
on the case law, which a couple of cases say a Level 2 is sufficient, I’m going
to have to allow his testimony on those issues. 
I am going to limit -- I don’t think he has training to do the speed
calculations, but as to the rest of it, he can give his opinion.  And then there’s lots of cross-examination
material available for Trooper Hobbs through those depositions.  So I’m going to allow it.

 

The trial court later clarified
that “how [Hobbs] believes the accident happened” was admissible. 

            At
trial, Kelly introduced deposition excerpts, during which Hobbs testified
concerning the causation of the accident. 
Hobbs testified[10]
that Johnson had only seconds to react to a “sudden emergency” and that Hobbs “believe[d]
he did the right thing . . . .”  Hobbs
opined that Johnson’s actions did not contribute to or cause the accident and
that Weisheit was responsible for the collision.  

            This
case requires consideration of two different Rules of Evidence—Rule 701, which
governs lay opinions, and Rule 702, which governs expert opinions.  Rule 701 provides:

If the witness is not
testifying as an expert, the witness’ testimony in the form of opinions or
inferences is limited to those opinions or inferences which are (a) rationally
based on the perception of the witness and (b) helpful to a clear understanding
of the witness’ testimony or the determination of a fact in issue.

 

Tex. R. Evid. 701.  Rule 702 provides:

If scientific, technical, or other specialized
knowledge will assist the trier of fact to understand the evidence or to
determine a fact in issue, a witness qualified as an expert by knowledge,
skill, experience, training, or education, may testify thereto in the form of
an opinion or otherwise.

 

Tex.
R. Evid. 702.  We note that
opinion testimony is not objectionable because it embraces an ultimate issue.[11]  Tex.
R. Evid. 704.

            A.        Hobbs’ Testimony Contained Opinions

            We
begin by noting that not all of Hobbs’ testimony was opinion testimony.  Most of the testimony involves descriptions
of witness statements and descriptions of the physical evidence, including the
damage to the vehicles, the position of the vehicles, and conditions of the
roadway.  Such testimony is not opinion
testimony.  Hobbs, though, also provided
opinions concerning how the wreck occurred.  Hobbs described a number of conclusions he
reached concerning the movements of the vehicles during the accident.  He described his opinions concerning the
movement of Juarez’s vehicle after the collision with Weisheit, the movement of
Goble’s vehicle and Weisheit’s vehicle before and after they collided, and the
movement of Juarez’s vehicle after it collided with the bus.  These conclusions were Hobbs’ opinion—not merely
a recitation of witness statements or personal observations.  

            Hobbs
also testified concerning whether Johnson was negligent.  Hobbs testified Johnson had only seconds to
react to a “sudden emergency” and that he “believe[d] he did the right thing
. . . .”  Hobbs opined that
Johnson’s actions did not contribute to or cause the accident and that Weisheit
was responsible for the collision.  Hobbs
testified as follows: 

            Q         [Kelly’s attorney]  Are you able to characterize how much
reaction time you believe Andrew Johnson, the driver of the tour bus, had to
react to the presence of Mr. Juarez’s vehicle?

 

            A         [Hobbs] 
Probably, just seconds.  . . . I
believe that no more than just a few seconds from what he - - from him being in
the fast lane, he only had a couple of seconds to actually -- when the truck --
If you’re asking my opinion on what his reactions were to the -- I believe he
did all he could do to avoid the situation.

 

            Q         Do you believe that we’re talking a
very brief period of time, between the time he would have noticed the vehicle
in the median and the time he could have thought to apply his brakes?

 

            A         Just probably seconds.

 

            Q         Okay. 
Do you believe that the bus driver, Andrew Johnson was presented with a
sudden emergency there on the roadway?

 

            .
. . .

 

            A         It was either go into the median -- I
can’t testify to say if he had traffic around him, but from what I would gather
that day there was a lot of traffic on the interstate.  So he’d either go into the right lane and
have a collision or go into the median or he could stay in his lane.  I believe he did the right thing and just
kind of - - being as he had passengers on the bus, so . . .

 

            Q         Do you believe that Andrew Johnson’s
actions caused or contributed to cause this accident?

 

            .
. . .

 

            A         Do I believe -- Say that one more time.

 

            Q         That the bus driver, Andrew Johnson --
Do you believe his actions caused or contributed to cause this accident?

 

            .
. . . 

 

            A         No, sir.

 

            Q         Do you believe that Andrew Johnson
responded appropriately when faced with a vehicle coming into his lane of
traffic?

 

            A         Yes, sir.  I believe he did the best he could without
stopping.  Evidently he couldn’t stop in
time, but I believe he did what he -- to avoid the accident, and like I said
into the slow lane or taking the chance of putting his bus into the
median.  I believe he did what he could
do.  He did the best of his abilities.

 

            Q         In his statements, Andrew Johnson
stated that he applied his brakes and tried to maintain vehicle control in his
lane, do you believe that was appropriate evasive action given his vehicle and
situation he was faced with?

 

            A         Yes, sir.

 

            .
. . .

 

            Q         Did you find that Andrew Johnson bears
any responsibility for this accident?

 

            .
. . .

 

            A         No, sir.  I don’t.

 

            Q         And why not?

 

            A         Because basically he was just faced
with -- I mean, the car was coming over at the last minute.  I believe he saw it and he applied his brakes
and did what he could do to avoid the vehicle, and just more or less the impact
from the truck hitting his bus is what caused basically the death.

 

            Q         Which drivers’ actions do you believe
are responsible for causing this collision?

 

            .
. . .

 

            A         I believe it was Mr. Weisheit’s
rear-end collision that forced him to cross the median striking the bus.

 

            To
the extent Hobbs’ testimony concerned his observations of the physical evidence
and the conditions of the scene, the testimony was clearly admissible.  Hobbs, though, was also requested to express
a number of opinions concerning accident reconstruction.  These conclusions did not describe Hobbs’ observations,
but rather described Hobbs’ opinions.  

            B.        Hobbs’
Opinion Testimony Does Not Qualify as Lay Opinion Testimony

            The
next question is whether the opinion testimony qualifies as lay witness opinion
testimony under Tex. R. Evid.
701.  This inquiry depends on whether the
opinions expressed were based on the witness’ perceptions.  Both the Texas Supreme Court and this Court
have noted that experts do not necessarily testify as expert witnesses and that
expert witnesses may testify as lay opinion witnesses if their opinion is based
on personal perception.[12]  Reid
Rd. Mun. Util. Dist. No. 2, 337 S.W.3d 846; Hathcock v. Hankook Tire Am. Corp., 330 S.W.3d 733, 747 (Tex. App.––Texarkana
2010, no pet.); see also Anthony Equip.
v. Irwin Steel Erectors, Inc., 115 S.W.3d 191 (Tex. App.—Dallas 2003, pet.
dism’d) (Although police officer did not qualify as an expert, he “could
testify as a lay witness concerning his observations of the accident.”).  

            A
lay witness may testify to opinions “which are 1) rationally based on the
perception of the witness and 2) helpful to an understanding of his testimony
or a determination of the fact at issue.” 
Havner v. E-Z Mart Stores, Inc., 825 S.W.2d 456, 464–65 (Tex.
1992); see Tex. R. Evid. 701.  The
Texas Court of Criminal Appeals has provided a detailed analysis of this rule
in Fairow v. State, 943 S.W.2d 895
(Tex. Crim. App. 1997).  The requirement
that an opinion be rationally based on the perceptions of the witness is
composed of two parts:  (1) “the witness
must establish personal knowledge of the events from which his opinion is
drawn”; and (2) “the opinion drawn must be rationally based on that
knowledge.”  Id. at 898.  

            “An
opinion will satisfy the personal knowledge requirement if it is an
interpretation of the witness’s objective perception of events.”  Id.
at 899.  While Hobbs observed the
accident scene after the accident, he did not observe the accident.  “Rule 701’s requirement that the testimony be
based on the witness’s perception presumes the witness observed or experienced
the underlying facts.”  Bd. of Trs. of Fire & Police Retiree
Health Fund v. Towers, Perrin, Forster & Crosby, Inc., 191 S.W.3d 185, 193 (Tex. App.––San
Antonio 2005, no pet.) (quoting Turro v.
State, 950 S.W.2d 390, 403 (Tex. App.—Fort Worth 1997, pet. ref’d)).  Thus, any lay opinion must be rationally
based on Hobbs’ observations of the accident scene, because he did not
personally observe the accident.

            “An
opinion is rationally based on perception if it is an opinion that a reasonable
person could draw under the circumstances.” 
Fairow, 943 S.W.2d at
900.  The accident in this case involved
multiple vehicles and multiple collisions. 
Any lay person who observes an accident scene involving skid marks and
the final resting places of the vehicles may have an opinion as to what
occurred and who was at fault.  But such
an opinion is not based on a computation of the speed of the vehicles, or the
reaction time at such speed, and ultimately involves speculation.  While Hobbs was certainly more experienced
than the average lay person, no evidence was presented that he was trained to
convert the physical findings and translate them into movement of the vehicles,
reaction time, and causation of the accident.[13]  

            Hobbs’
opinion testimony was not based solely on his perceptions of the accident
scene.  Therefore, the testimony was not
admissible as lay opinion testimony.[14]  In order to be admissible, the testimony must
have qualified as an expert opinion.[15]

            C.        Hobbs’ Qualifications as an Expert
Witness

            This brings us to the question of
whether Hobbs was qualified to render expert testimony.  Lopez-Juarez argues Kelly failed to prove
Hobbs was qualified.  Kelly argues police
officers with a Level II certification always qualify as experts.  Because Hobbs had a Level II certification,
Kelly argues he was qualified.  

            The
party calling the potential witness has the burden to show that the potential
witness is an expert witness.  United Blood Servs. v. Longoria, 938 S.W.2d
29, 30 (Tex. 1997).  Testimony on
accident causation must be given by a qualified person in that science.  Pilgrim’s
Pride Corp., 134 S.W.3d at 891; Gainsco
County Mut. Ins. Co. v. Martinez, 27 S.W.3d 97, 104 (Tex. App.—San Antonio
2000, pet. dism’d by agr.).  

            We
review the admission of expert witness testimony for an abuse of
discretion.  SunBridge Healthcare Corp. v. Penny, 160 S.W.3d 230, 236 (Tex.
App.—Texarkana 2005, no pet.).  Under an
abuse of discretion review, we are not free to substitute our own judgment for
the county court’s judgment.  Bowie Mem’l Hosp. v. Wright, 79 S.W.3d
48, 52 (Tex. 2002).  We, however, do not
give absolute deference to the trial court’s decision.  “A court abuses its discretion if its
decision is arbitrary, unreasonable, or without reference to guiding
principles.”  In re Gen. Elec. Co., 271 S.W.3d 681, 685 (Tex. 2008); Ne. Tex. Staffing v. Ray, 330 S.W.3d 1,
3 (Tex. App—Texarkana 2010, no pet.). 
The Texas Supreme Court has noted the abuse of discretion standard “is
similar, although not identical, to the federal standard of ‘clearly
erroneous.’”  Goode v. Shoukfeh, 943 S.W.2d 441, 446 (Tex. 1997).  

            The
qualification of an expert witness is governed by Tex. R. Evid. 702.  SunBridge Healthcare, 160 S.W.3d at
237.  An expert’s testimony is admissible
if (1) the expert witness is qualified to testify about “scientific, technical,
or other specialized knowledge,” and (2) the testimony is relevant and based
upon a reliable foundation.  TXI Transp. Co., 306 S.W.3d at 234; Zwahr, 88 S.W.3d at 628; SunBridge Healthcare, 160 S.W.3d at
237.  

            Texas
courts have permitted police officers to testify concerning accident
reconstruction in some cases,[16]
but have concluded police officers were not qualified in other cases.[17]  This Court has held: 

            As
a general rule, police officers, based on their position as police officers
alone, are not qualified to render opinions regarding accidents.  However, police officers are qualified to
testify regarding accident reconstruction if they are trained in the science
and possess the high degree of knowledge sufficient to qualify as an expert.  No definite guidelines exist for determining
whether a particular witness possesses the knowledge, skill, or expertise to
qualify as an expert. 

 

Pilgrim’s Pride, 134 S.W.3d at 891–92 (citations omitted).  

            The
inconsistency of the caselaw is due to the fact that different accidents
require different levels of expertise. 
In Brown v. State, the Tyler
Court of Appeals held that mathematical modeling is not required in all
accident reconstructions.  303 S.W.3d
310, 319–21 (Tex. App.—Tyler 2009, pet. ref’d). 
We agree with this proposition. 
In simple accidents, the accident reconstruction can be conducted
without mathematical modeling.  

            There
should not be any per se rules of admissibility.  Whether a police officer is qualified depends
on the facts of each case.  The Texas
Supreme Court has observed that the offering party must establish that the
expert has knowledge, skill, experience, training, or education regarding the
specific issue before the court which would qualify the expert to give an
opinion on that particular subject.  Broders v. Heise, 924 S.W.2d 148, 153
(Tex. 1996).  The expert’s expertise must
be measured against the particular opinion the expert is offering.  See id.  While a police officer may possess sufficient
knowledge, skill, or expertise for one case, another case might require a
greater degree of expertise.  As this Court
stated in Pilgrim’s Pride, there are
“[n]o definite guidelines.”  Pilgrim’s Pride, 134 S.W.3d at 892.  We refuse to recognize a per se rule that the
testimony of a police officer with a Level II certification is always
admissible expert testimony.  Whether a
police officer possesses sufficient expertise must be evaluated under the facts
of each case and the specific issue on which the expert testimony is
proffered.  In simple accidents, the
accident reconstruction can be conducted without mathematical modeling.  

            Kelly
argues—based on two memorandum opinions of the Waco Court of Appeals—that the
testimony of a police officer with a Level II certification is admissible as
expert testimony.  We decline to follow
the two memorandum opinions of the Waco Court of Appeals and note that one of
the opinions was reversed on other grounds and the remaining opinion is
factually distinguishable from this case.

            In
Lingafelter v. Shupe, the Waco court
stated that “[t]he opinion of an investigating officer with level two
reconstruction training is admissible.”  No.
10-03-00113-CV, 2004 Tex. App. LEXIS 10355, at *13 (Tex. App.—Waco Nov. 17,
2004) (mem. op.), rev’d, 192 S.W.3d
577 (Tex. 2006).  We note Lingafelter is similar to the facts of
this case and was a complex accident. 
The accident was initially a rear-end collision where one vehicle
swerved into the lane of oncoming traffic and was hit by a tractor-trailer.  Id.
at *2.  Lingafelter, as acknowledged by Kelly, was reversed on other
grounds by the Texas Supreme Court.  Shupe v. Lingafelter, 192 S.W.3d 577 (Tex. 2006).  While the Texas Supreme Court did not address
the admissibility of the expert witness, it also did not approve of the Waco court’s
conclusions.  

            The
other case relied upon by Kelly was Dewbre
v. Anheuser-Busch, Inc., No. 10-08-00022-CV,
2008 Tex. App. LEXIS 9046 (Tex. App.—Waco Nov. 26, 2008, pet. denied) (mem.
op.).  In Dewbre, a driver was transporting beer when his load shifted and the
truck rolled over.  Id.  The Waco court held that
a trooper with a Level II certification could testify the accident was caused
by the load shifting.  Id. 
The opinion does not mention any evidence that any other vehicles were
involved.  See id.  Dewbre does not contain any dicta that a police officer with a
Level II certification always qualifies as an expert.  Further, Dewbre
is factually distinguishable from the current case.  Unlike the case here, Dewbre concerned a relatively simple accident.  

            This
case involves multiple vehicles, multiple collisions, and can only be
reconstructed with knowledge and skills exceeding the experience of most police
officers.  While most police officers may
have sufficient experience to reconstruct a simple accident, they do not have
the knowledge or experience to reconstruct a multiple vehicle accident which
occurred at high speeds based on the position of the vehicles, air-bag
deployment, and damage to the vehicles.  Such complex accidents require mathematical
modeling.  Calculating the direction and
speed of a vehicle after a collision is beyond the experience of most police
officers.  Without expertise in
mathematical modeling, conclusions in an accident as complex as the accident at
issue would be nothing more than mere speculation.  We are not saying that a mathematical
modeling of an accident is the only way to determine the cause of an
accident.  However, when an accident is
sufficiently complex, mathematical modeling is required.

            Kelly
alternatively argues, under the facts of this case, that Hobbs had sufficient
expertise to testify as an expert witness. 
Kelly cites Sciarrilla v. Osborne,
946 S.W.2d 919, 921 (Tex. App.—Beaumont 1997, pet. denied) (finding officer
qualified when he had received training in taking “the weights of vehicles,
where such vehicles come to rest, and us[ing] different types of formulas to
calculate speed, direction of travel, and the like”).  We conclude Sciarrilla is distinguishable because the police officer had
greater expertise and the accident was less complex.  The police officer in Sciarrilla had taken “science and engineering courses in college,”
had “attended a three week advanced accident reconstruction school,” and had
investigated between “four hundred and five hundred accidents.”  Id.
at 920–21.  The police officer had a more
extensive academic background than Hobbs and had double the experience in
investigating accidents.  In addition, Sciarrilla is distinguishable because the
accident was less complex.  In Sciarrilla, the plaintiff contended the
defendant came into her lane, forced her off the road, and caused her vehicle
to flip over.  Id. at 923.  Sciarrilla did not involve a multiple
car accident and, thus, less expertise was required to analyze it.  

            In
Walker v. Rangel, the Fourteenth
District held the trial court abused its discretion in admitting the testimony
of a police officer who was not qualified to testify as an expert witness.  Walker
v. Rangel, No. 14-08-00643-CV, 2009 Tex. App. LEXIS 9215 (Tex. App.—Houston
[14th Dist.] Dec. 3, 2009, no pet.) (mem. op.). 
The court reasoned that the police officer had “received only basic
training in accident investigation” and “admitted he is not an accident
reconstruction expert.”  Id. at *9.  The court noted the police officer had twenty
years of experience and had investigated approximately 150 accidents, but noted
the police officer “failed to explain how this experience imbued him with
expertise in accident reconstruction.”  Id. at **8–9. 

            Similar to Walker, Hobbs did not have extensive
training in accident reconstruction. 
Further, Hobbs disclaimed expertise. 
See Pilgrim’s Pride, 134 S.W.3d at 890 (considering police officer’s
disclaimed expertise and finding in dictum that police officer not qualified to
testify as expert); see also Lewis v. Hunter, No. 05-01-01035-CV,
2002 Tex. App. LEXIS 2536 (Tex. App.—Dallas Apr. 10, 2002, pet. denied) (not
designated for publication) (doctor who disclaimed expertise in psychology and
had no direct knowledge of effect on patient not qualified).  

            Hobbs
had worked for the Smith County Sheriff’s Department from 1997 to 2002 as a
jailer, bailiff, and courthouse security. 
Since 2002, he has worked for the Texas Department of Public Safety
(DPS).  Hobbs currently works for the
Longview office of the DPS.[18]  He testified he had extensive experience
investigating accidents.  Hobbs could not
remember the exact number of accidents he had investigated, but estimated the number
as somewhere between 100 to 240.  Hobbs
testified he had investigated four or five fatalities.  

            The
record, though, does not establish Hobbs had extensive or specialized knowledge
in accident reconstruction.  While
working for Smith County, Hobbs attended a police academy conducted by the
Tyler Police Department.  He completed a
Level II certification in accident reconstruction through the DPS in
Austin.  Hobbs testified,

For the one at the Sheriff’s Department.  The academy they sent us to in Tyler, TJC,
Tyler Police -- Tyler PD put on, it was basically just the basics of how to
fill out the, at the time, ST3s, accident report, just some minor investigations.  And then when I went to the academy and
DPS.  They go through a lengthy Level II
Certified Reconstruction.  Pretty much
just diagramming scenes, measuring, taping, painting and diagramming the
scenes, and pretty much that’s the only level -- I’ve only been to Level
II.  That’s as far as I’ve been.

 

Hobbs testified he had never
testified concerning accident reconstruction. 
When asked how many accidents he was “in charge of doing the
reconstruction on,” Hobbs responded,

Actually, I don’t -- I’m not necessarily in
charge.  All I do is measure.  We go out and measure.  They have a reconstruction team through 1B --
Region 1B that comes in, and if we have a high priority case, they will come in
and reconstruct the scene for us, but that’s a certain team that they use that
are actual Level, I think VI.  So five or
six certifieds do that.

            Basically
all I’m eligible to do is go out -- once I mark the scene, after it’s cleared,
we come back later on and several of us troopers in the area will get our measuring
tapes and we’ll go out and measure points from where the actual vehicles
were.  And then you got the couple of
troopers in the office that they put it through a power point on their laptops
and print it off.

 

            The
record does not contain much evidence concerning the details of a Level II
certification.  Hobbs testified:

            Q         [Lopez-Juarez’s attorney]  . . . . And what additional things about
accident investigation or reconstruction do you learn in Level II as opposed to
what you learn at Level I at the Academy?

 

            A         [Hobbs] 
Level I was just basically how to do the reports, how to measure some of
the scenes.  Level II goes into again the
diagramming, like in the sheet I have here. 
It goes into the velocity of the speeds, the vault formulas, if reaction
times or skids . . . .

 

Later
cross-examination revealed:

            Q         [Lopez-Juarez’s
attorney]  How many levels are there?

 

            A         [Hobbs]  I believe -- I don’t want to lie here, but I
believe there’s six.  Because I know III
is a more detailed and they reconstruct -- they do the formulas of more
in-depth, more mathematical problems.  I
think there’s a IV.  I want to say V is a
[––] like a diagramming on the computer drawings.  That’s just -- You can go --  You go I, II, III.  You can jump from II to V just to do the
diagramming on the videos - - or the computer. 
But if you want to go through the whole thing, reconstruction, I want to
say VI, but I’m not really for sure.  

 

            Q         And besides the more mathematical
calculations, did you learn that in Level II, how to do the mathematical --

 

            A         You learn the basics, skid and stuff
like that.  But usually if something to
this nature, if something happens this big of a scale, we usually just call the
reconstruction team, where they’re all certified Level VI or V – VI, I believe
and they come out and do everything.

 

Still later, Hobbs testified,

            Q         [Lopez-Juarez’s attorney]  . . . . How do you get to a different level
on accident investigations with DPS?  Do
you have to take classes?

 

            A         [Hobbs] 
Yes, sir.  You have to go -- They’ll
have training classes at the DPS in Austin. 
You go down to Austin and they’ll put you through a two-week or a
three-week, whatever it is.  It’s just
like a regular course.  You go through
and you have tests every other day or whatever it is.  And then I think you have like a semi-final
and then a final, and then once you pass it -- I think actually what it is,
when you go to -- say you’re going from Level II to Level III, the first day
you get there you have a test on pretty much Level I, II stuff.  And if you pass -- If you fail that test they
send you home.

            So
if you pass that one, then you’ll continue the two to three weeks of training
or whatever.  They want to make sure you
still understand the stuff that you -- prior, before they even waste their time
starting, so...  Level II is about as far
as I want to go.  So it’s math and all of
that.  You got to be pretty smart to go
through all the six levels.

            

            Q         You don’t like math too much?

 

            A         No, sir.  I’m not really keen on the math.  That’s why when it gets down to something
this big, if we have to call -- we just call the reconstruction team out and
they’re experts at it, so...

 

            Other
than his Level II certification and experience, Hobbs does not have any
additional qualifications.  He denied having
any physics training or being an expert in physics:

            Q         [Lopez-Juarez’s
attorney]  Now did you take any physic’s
[sic] classes in high school?

 

            A         [Hobbs]  Physics? 
Not that I can remember.  I took
the regular pre-algebra and stuff.  But
if you’re asking me if I can testify expertly about -- no, sir.

 

Kelly argues that “Lopez-Juarez
provides no reason, and there is no reason, why not being trained in physics
should militate against him being qualified to testify as an expert in accident
reconstruction in this case, particularly when he is certified at Level
II.”  We disagree.  The fact that an expert has never had any
physics training is highly relevant.  Reconstruction
of complex accidents is governed by physics.

            Under
the facts of this case, the trial court abused its discretion.  Kelly had the burden to establish Hobbs was
qualified to testify as an expert.  Kelly
failed to meet that burden.  While a
police officer with a Level II certification may be qualified to testify as to
causation in simple accidents—depending on the facts of the case—the
certification of the police officer, by itself, is not determinative.  Hobbs disclaimed expertise and had never
testified as an expert in accident reconstruction, and admitted his expertise
was limited to measuring and diagramming an accident site.  He admitted he had no training in physics and
disliked math.  While Hobbs was clearly
qualified to testify concerning his measurements and diagrams, it was error for
the trial court to conclude Hobbs was an expert on accident
reconstruction.  The trial court’s
decision was an abuse of discretion.  

            D.        Reversible Error Did Not Occur

            The next issue is whether the trial
court’s error is reversible.  An error in
the admission of evidence is reversible if the error probably caused the
rendition of an improper judgment.  Tex. R. App. P. 44.1; TXI Transp. Co., 306 S.W.3d at 242; Southland Lloyd’s Ins. Co. v. Tomberlain,
919 S.W.2d 822, 828 (Tex. App.—Texarkana 1996, writ denied).  This test is not a “but for” test—the appellant
needs to only prove that the error probably resulted in the rendition of an
improper judgment.  McCraw v. Maris, 828 S.W.2d 756, 757–58 (Tex. 1992).  The Texas Supreme Court has recently noted:

Probable error is not subject to precise
measurement, but it is something less than certitude; it is a matter of
judgment drawn from an evaluation of “the whole case from voir dire to closing
argument, considering the ‘state of the evidence, the strength and weakness of
the case, and the verdict.’” 

 

TXI Transp. Co., 306 S.W.3d 242–43 (quoting Reliance Steel & Aluminum Co. v. Sevcik, 267 S.W.3d 867, 871
(Tex. 2008); Standard Fire Ins. Co. v.
Reese, 584 S.W.2d 835, 841 (Tex. 1979)). 
Whether an alleged error is deemed reversible normally will be
determined from reviewing the entire record. 
Reinhart v. Young, 906 S.W.2d
471, 473 (Tex. 1995).

            The
Texas Supreme Court has said that reversible error does not exist when the
evidence erroneously admitted is cumlative and not controlling on a material
issue that is dispositive of the case.  See Gee v. Liberty Mut. Fire Ins. Co.,
765 S.W.2d 394, 396 (Tex. 1989) (stating “[t]his court will ordinarily not find
reversible error for erroneous rulings on admissibility of evidence where the
evidence in question is cumulative and not controlling on a material issue
dispositive of the case”); Tomberlain,
919 S.W.2d at 828.  

            Hobbs’
conclusion that Johnson was not at fault was cumulative of other evidence.  Two bus passengers testified Johnson was not
at fault.  William Nalle,[19]
Kelly’s expert, testified Johnson only had “1.3 to 2-point -- just over 2
seconds” to avoid the accident.  Nalle
testified it was a “physical impossibility” that Juarez’s vehicle came to a
stop.  When asked if Nalle agreed with
Hobbs that “there was nothing Mr. Johnson could have done to avoid this
accident,” he testified, “I absolutely agree with the trooper on that.”  Johnson testified he did not have time to
swerve because “you can’t make instant decisions with a bus.”  Johnson also testified none of the police
officers were critical of his actions.  

            Lopez-Juarez
argues Hobbs, as a disinterested nonretained expert tipped the balance in the
battle of the two retained experts.  Dirk
Smith,[20]
Lopez-Juarez’s expert, testified that based on his calculations, Juarez’s
vehicle came to a stop in the left-hand, eastbound lane before being struck by
the bus.  Smith testified that if
Juarez’s vehicle had been moving at the speed calculated by Nalle, there would
have been significantly more damage.[21]  Johnson, in Smith’s opinion, failed to keep a
proper lookout and was traveling too fast for the weather conditions.  Smith testified this was not an unavoidable
accident.  

            The
Texas Supreme Court has stated that “[t]ypically, a successful challenge to a
trial court’s evidentiary rulings requires the complaining party to demonstrate
that the judgment turns on the particular evidence excluded or admitted.”  Interstate
Northborough P’ship v. State, 66 S.W.3d 213, 220 (Tex. 2001); see City of Brownsville v. Alvarado, 897
S.W.2d 750, 753–54 (Tex. 1995) (“A successful challenge to evidentiary rulings
usually requires the complaining party to show that the judgment turns on the
particular evidence excluded or admitted.”). 
The Texas Supreme Court has explained that

whether erroneous admission is harmful is more a
matter of judgment than precise measurement. 
In making that judgment, we have sometimes looked to the efforts made by
counsel to emphasize the erroneous evidence and whether there was contrary
evidence that the improperly admitted evidence was calculated to overcome.

 

Nissan Motor Co. v. Armstrong, 145 S.W.3d 131, 144 (Tex. 2004)
(citations omitted).  

            It
is our opinion that Hobbs’ testimony was merely cumulative and not
controlling.  Most of his testimony was
not expert testimony.  Nalle, Kelly’s
other expert witness, provided expert testimony consistent with Hobbs’
conclusions.  Nalle testified in much
greater detail, length, and depth than Hobbs. 
Nalle explained the methods he used and the calculations he made.  Compared to the lengthy and detailed expert
testimony of Nalle and Smith, Hobbs’ testimony was brief and unexplained.  We cannot say that the admission of Hobbs’
testimony caused the rendition of an improper judgment.  Although the trial court erred in permitting
Hobbs to testify as an expert, the error did not result in reversible error.

III.       The Requested
Negligence Per Se Instruction

            In
her second point of error, Lopez-Juarez contends the trial court erred in
denying her requested instruction on negligence per se.  The requested instruction was submitted[22]
to the trial court in writing as follows:

The law forbids an individual from driving a commercial
motor vehicle when that individual’s medical examiner’s certificate is
expired.  A failure to comply with this
law is negligence in itself.  As to HUEY
KELLY d/b/a KELLY TOURS and ANDREW JOHNSON, a failure to comply is excused and
not negligence if HUEY KELLY d/b/a KELLY TOURS and ANDREW JOHNSON neither knew
nor should have known of the occasion for compliance.

 

The trial court overruled the
requested instruction.  

            We
review the refusal to submit the requested instruction for an abuse of discretion.  Shupe,
192 S.W.3d at 579; James v. Kloos, 75
S.W.3d 153, 162 (Tex. App.—Fort Worth 2002, no pet.).  When evaluating whether the trial court
abused its discretion by refusing to submit a requested instruction, the focus
of our review is whether the requested charge was reasonably necessary to
enable the jury to render a proper verdict. 
See Tex. R. Civ. P. 277; Tex.
Workers’ Comp. Ins. Fund v. Mandlbauer, 34 S.W.3d 909, 912 (Tex. 2000); Wilen v. Falkenstein, 191 S.W.3d 791,
803 (Tex. App.—Fort Worth 2006, pet. denied). 


            “Negligence
per se is a tort concept whereby the civil courts adopt a legislatively imposed
standard of conduct as defining the conduct of a reasonably prudent
person.”  Moughon v. Wolf, 576 S.W.2d 603, 604 (Tex. 1978); see Reeder v. Daniel, 61 S.W.3d 359, 361–62
(Tex. 2001).  “To establish negligence
per se, a plaintiff must prove:  (1) the
defendant’s act or omission is in violation of a statute or ordinance; (2) the
injured person was within the class of persons which the ordinance was designed
to protect; and (3) the defendant’s act or omission proximately caused the
injury.”  Ambrosio v. Carter’s Shooting Ctr., Inc., 20 S.W.3d 262, 265 (Tex. App.—Houston [14th Dist.] 2000,
pet. denied).  

            The
rules and regulations of the Federal Motor Carrier Safety Administration
provide:  “A person . . . must not
operate a commercial motor vehicle unless he or she is medically certified as
physically qualified to do so and . . . when on-duty has on his or her person
the original, or a copy, of a current medical examiner’s certificate that he or
she is physically qualified to drive a commercial motor vehicle.”  49 C.F.R. § 391.41 (LEXIS through 2011).  The record contains evidence Johnson failed
to possess a valid medical examiner’s certificate.  Johnson’s medical certificate produced by
Kelly expired three months before the accident.[23]  A violation of the Federal Motor Carrier
Safety Administration Rules is a class C misdemeanor.  See
Tex. Transp. Code Ann. §§
644.051, 644.151 (West 2011); 37 Tex. Admin.
Code § 4.11 (LEXIS through 2011).  Kelly argues there is no evidence the
statutory violation was the proximate cause of the accident.[24]  

            Lopez-Juarez
argues there is evidence that Johnson’s vision, hearing, or reflexes
contributed to the accident.  The
violation of the statute or ordinance must be the proximate cause of the
injury.  See Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 549 (Tex. 1985); Moughon, 576 S.W.2d at 606; see also Durham v. Zarcades, 270 S.W.3d
708, 719–20 (Tex. App.—Fort Worth 2008, no pet.).  To establish proximate cause, a plaintiff
must prove two elements:  cause-in-fact
and foreseeability.  IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason, 143
S.W.3d 794, 798 (Tex. 2004).  Cause-in-fact
is established when the act or omission was a substantial factor in bringing
about the injuries, and without it, the harm would not have occurred.  Id.

            Smith,
the plaintiff’s expert, testified a person of reasonable vision, hearing, and
reflexes could have avoided the accident. 
Smith, though, did not testify Johnson lacked reasonable vision,
hearing, or reflexes.  Lopez-Juarez’s
argument requires an inference that—because a person of reasonable vision,
hearing, and reflexes could have avoided the accident—Johnson must have medical
problems since he did not avoid the accident. 
In North American Van Lines,
the unlicensed driver had impaired vision. 
50 S.W.3d at 123.  In this case,
there is no evidence Johnson had impaired vision.  There is too great an analytical gap—this
“evidence” is nothing more than mere speculation.  A “mere possibility” that the statutory
violation caused the injury is legally insufficient to support a finding of
causation.  Reinicke v. Aeroground, Inc.,
167 S.W.3d 385, 389 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).  

            Lopez-Juarez
has not directed this Court to where in the record there is more than a
scintilla of evidence that the violation of the Federal Motor Carrier Safety
Administration Rules was the proximate cause of the occurrence.  We have not been directed to any evidence
that the accident was caused by a medical condition of Johnson.  In the absence of evidence that the violation
was a proximate cause of the accident, the trial court did not err in denying
the requested instruction on negligence per se.

            We affirm the judgment of the trial
court.

 

 

 

 

                                                                        Jack
Carter

                                                                        Justice

 

Date Submitted:          June 8, 2011

Date Decided:             August
16, 2011











[1]Weisheit’s
vehicle was then struck by a vehicle driven by Beverly Woolsey Goble.

 





[2]It
was drizzling and visibility was poor.  

 





[3]Johnson
did not possess a valid medical examiner’s certificate as required by law.  





[4]See, e.g., Ratcliff v. LHR, Inc., No. 09-07-00566-CV, 2009 WL 1474725, at *5
n.1 (Tex. App.—Beaumont May 28, 2009, pet. denied) (mem. op.); Anchia v. DaimlerChrysler AG, 230 S.W.3d
493, 500 n.1 (Tex. App.—Dallas 2007, pet. denied); Campbell v. Stucki, 220 S.W.3d 562, 570 (Tex. App.—Tyler 2007, no
pet.); Ledig v. Duke Energy Corp.,
193 S.W.3d 167, 177 n.8 (Tex. App.—Houston [1st Dist.] 2006, no pet.); Lefton v. Griffith, 136 S.W.3d 271, 274
(Tex. App.—San Antonio 2004, no pet.); Zamarron
v. Shinko Wire Co., 125 S.W.3d 132, 139 (Tex. App.—Houston [14th Dist.] 2003,
pet. denied); In re A.M., 101 S.W.3d
480, 486 (Tex. App.—Corpus Christi 2002), rev’d
on other grounds, 192 S.W.3d 570 (Tex. 2006); Barnes v. SWS Fin. Servs., 97 S.W.3d 759, 761 n.3 (Tex. App.—Dallas
2003, no pet.); JHC Ventures, L.P. v.
Fast Trucking, Inc., 94 S.W.3d 762, 773 n.9 (Tex. App.—San Antonio 2002, no
pet.); Sunbeam Envtl. Servs. v. Tex.
Workers’ Comp. Ins. Facility, 71 S.W.3d 846, 851 (Tex. App.—Austin 2002, no
pet.); City of El Paso v. Public
Util. Comm’n of Tex., 839 S.W.2d 895, 925 (Tex. App.—Austin 1992), aff’d in part, rev’d in part on other
grounds, 883 S.W.2d 179 (Tex. 1994); Brentwood
Fin. Corp. v. Lamprecht, 736 S.W.2d 836, 846 n.3 (Tex. App.—San Antonio
1987, writ ref’d n.r.e.); Gabriel v.
Snell, 613 S.W.2d 810, 813 (Tex. App.—Houston [14th Dist.] 1981, no writ); Acreman v. Sledge, No. 07-02-0238-CV,
2003 WL 103203, at *2 (Tex. App.—Amarillo Jan. 10, 2003, no pet.) (mem. op.); Walker v. TDCJ-ID, No. 07-00-0450-CV, 2001
WL 946503, at *3 n.1 (Tex. App.—Amarillo Aug. 16, 2001, no pet.) (not
designated for publication); see Anderson
Producing, Inc. v. Koch Oil Co., 929 S.W.2d 416, 424 (Tex. 1996).    

 





[5]Tex. R. App. P. 38.7.  

 





[6]Tex. R. App. P. 38.9; Verburgt v. Dorner, 959 S.W.2d 615,
616–17 (Tex. 1997) (“[W]e have instructed the courts of appeals to construe the
Rules of Appellate Procedure reasonably, yet liberally, so that the right to
appeal is not lost by imposing requirements not absolutely necessary to effect
the purpose of a rule.”).

 





[7]Tex. R. App. P. 43.3; see Wilson, 252 S.W.3d at 715 (remanding
based on legal sufficiency in interests of justice when party only requested a
remand and facts not fully developed).





[8]Tex. R. App. P. 44.3 (“A court of
appeals must not affirm . . . for formal defects or irregularities in appellate
procedure without allowing a reasonable time to correct or amend the defects or
irregularities.”).  

 





[9]In
her appellant’s brief, Lopez-Juarez only challenges the qualifications of
Hobbs.  Lopez-Juarez did not challenge
the reliability of Hobbs’ testimony in her appellant’s brief.  In her reply brief, Lopez-Juarez argued
Hobbs’ testimony contained analytical gaps. 
We note, in addition to the expert being qualified, an expert’s opinion
must also be reliable.  The reliability
requirement of Rule 702 focuses on the principles, research, and methodology
underlying an expert’s conclusions.  Exxon Pipeline Co. v. Zwahr, 88 S.W.3d 623, 629 (Tex. 2002); E.I. du Pont de Nemours & Co. v. Robinson,
923 S.W.2d 549, 557 (Tex. 1995).  “The
court’s ultimate task, however, is not to determine whether the expert’s
conclusions are correct, but rather whether the analysis the expert used to
reach those conclusions is reliable and therefore admissible.”  TXI Transp.
Co. v. Hughes, 306 S.W.3d 230, 239 (Tex. 2010) (citing Zwahr, 88 S.W.3d at 629).  In
an accident reconstruction case, the focus of the reliability inquiry should be
on whether “any significant analytical gaps in the expert’s opinion”
exist.  TXI Transp. Co., 306 S.W.3d at 235. 
We further note that evidence that is not reliable is “not only
inadmissible but incompetent as well.”  City of Keller v. Wilson, 168 S.W.3d
802, 813 (Tex. 2005).  Because we find
Hobbs lacked the qualifications necessary to testify as an expert to causation
and negligence in this case, it is not necessary to express an opinion
concerning the reliability of Hobbs’ expert opinion. 





[10]Hobbs
testified at trial by video deposition and written deposition.  At times during the trial, the parties could
not get the video deposition to play and read excerpts to the jury.  Elsewhere, video excerpts were played for the
jury.  The record contains a transcript
of Hobbs’ entire deposition and a list of which lines were played before the
jury.





[11]Rule
704 provides:  “Testimony in the form of
an opinion or inference otherwise admissible is not objectionable because it
embraces an ultimate issue to be decided by the trier of fact.”  Tex.
R. Evid. 704.  Historically, under
the common law, expert witnesses were prohibited from testifying as to the
ultimate issues which invade the province of the jury.  Fed.
R. Evid. 704 advisory committee’s note (LEXIS current through June 29,
2011); see Cole v. Waite, 246 S.W.2d 849, 852 (Tex. 1952) (“Whether she understood
the nature and effect of executing the deed was the ultimate issue for the jury
to determine, hence no witness could properly testify to that.”); Schutz v. State, 957 S.W.2d 52, 78 (Tex.
Crim. App. 1997).  





[12]The
Texas Supreme Court noted that Rule 701 of the Federal Rules of Evidence has
been amended to prohibit lay witnesses from giving opinion testimony concerning
scientific, technical, or other specialized knowledge.  Reid
Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd., 337 S.W.3d 846
(Tex. 2011).  While noting the Texas
Rules of Evidence have not been similarly amended, the Texas Supreme Court
cautioned that “the same concern—that expert testimony will be offered as
evidence without meeting the reliability requirements of Rule 702—underlies our
opinion.”  Id. at 851 n.2.  





[13]Kelly
argues, similar to this Court’s opinion in Pilgrim’s
Pride Corp. v. Smoak, 134 S.W.3d 880, 891 (Tex. App.—Texarkana 2004, pet.
denied), that expert testimony is not required. 
Pilgrim’s Pride concerned a
relatively simple two-vehicle accident.  Id. at 893.  This case is a multiple vehicle
accident.  Four different vehicles were
involved, three different collisions occurred, the witness accounts of the
accident differed, and the determination of fault depends on complex physics
calculations.  The complexity of the
accident at issue mandates additional expertise to establish causation.  We conclude Pilgrim’s Pride is factually distinguishable from this case.  

 





[14]A
lay opinion not based on the witness’ perception is inadmissible because “[m]ere
conjecture does not assist the jury.”  Bd. of Trs. of Fire & Police Retiree
Health Fund, 191 S.W.3d at 193–94 (quoting Fairow v. State, 920 S.W.2d 357, 361 (Tex. App.—Houston [1st Dist.]
1996), aff’d, 943 S.W.2d 895 (Tex.
Crim. App. 1997)).

 





[15]“The
expert is in effect not telling of facts at all, but of uniform physical rules,
natural laws, or general principles, which the jury must apply to the
facts.”  Parker v. Employers Mut. Liab. Ins. Co. of Wis., 440 S.W.2d 43, 46
n.5 (Tex. 1969) (quoting Hand, “Historical & Practical Considerations
Regarding Expert Testimony,” 15 Harv. L.
Rev. 40, 50 (1901)).





[16]See, e.g., Trailways, Inc. v. Clark,
794 S.W.2d 479, 483 (Tex. App.—Corpus Christi 1990, writ denied) (officer
allowed to testify regarding speed of bus based on skid marks and its
contribution to cause of accident); Rainbo
Baking Co. v. Stafford, 764 S.W.2d 379, 382–83 (Tex. App.––Beaumont 1989), writ denied, 787 S.W.2d 41 (Tex. 1990) (since
driver admitted acts of negligence, permitting officer to testify there was no
reason for accident to occur was not error, but was a shorthand rendition of
facts); DeLeon v. Louder, 743 S.W.2d
357, 359 (Tex. App.––Amarillo 1987), writ
denied, 754 S.W.2d 148 (Tex. 1988) (officer with “accident reconstruction
training” held to be qualified to testify regarding cause of accident); Rogers v. Gonzales, 654 S.W.2d 509, 513–14
(Tex. App.––Corpus Christi 1983, writ ref’d n.r.e.) (officer qualified to
testify regarding speed based on skid marks).

 





[17]See, e.g., Lopez v. So. Pac. Transp. Co., 847 S.W.2d 330, 335 (Tex. App.—El
Paso 1993, no writ) (officer not qualified to testify regarding cause of
accident where there was no showing of specialized knowledge in accident
reconstruction); St. Louis Sw. Ry. Co. v.
King, 817 S.W.2d 760, 763 (Tex. App.––Texarkana 1991, no writ) (court did
not abuse its discretion in excluding officer’s testimony regarding cause of
accident); Hooper v. Torres, 790
S.W.2d 757, 760–61 (Tex. App.––El Paso 1990, writ denied) (officer not
qualified to testify as to cause of accident because he was not accident
reconstructionist); Bounds v. Scurlock
Oil Co., 730 S.W.2d 68, 71 (Tex. App.––Corpus Christi 1987, writ ref’d
n.r.e.) (officer not qualified to express opinion on cause of accident where he
was not accident analyst or reconstruction expert).





[18]Hobbs
also worked for the DPS field office in Bay City for a year and a half.  





[19]Nalle
had a degree in mechanical engineering from the University of Texas and had
been a registered professional engineer since 1979 or 1980.  

 





[20]Smith
had a undergraduate degree in mechanical engineering from Purdue University, a
master’s degree in mechanical engineering from the University of Southern
California, and a Ph.D. in mechanical engineering from Purdue University.  Smith became a registered professional
engineer in 1994 or 1995.  Smith was also
a certified accident reconstructionist for the Accreditation Commission for
Traffic Accident Reconstructionists.  

 





[21]Smith
criticized Nalle’s barrier equivalent speed analysis and characterized it as
“completely wrong.”  

 





[22]We
are not expressing any opinion concerning whether the requested instruction was
a substantially correct statement of law. 





[23]Johnson
testified he renewed his medical certificate but may not have given it to
Kelly.  The certificate produced by Kelly
expired on January 13, 2004.  Johnson
could not explain why, after the accident, he had renewed his medical
certificate on August 5, 2004.  Johnson
admitted he had not been able to produce a medical certificate which was valid
at the time of the accident.  Kelly also
argues, because Johnson testified he had renewed the medical certificate, the
trial court did not err in denying the requested instruction.  Johnson’s testimony, though, is not
conclusive evidence that he possessed a valid medical certificate at the time
of the accident.

 





[24]Kelly
also challenges the first two factors of negligence per se, citing Freudiger v. Keller, 104 S.W.3d 294, 297
(Tex. App.––Texarkana 2003, pet. denied). 
Lopez-Juarez responds that these factors are met, citing North American Van Lines, Inc., 50
S.W.3d 103, 123 (Tex. App.––Beaumont 2001, pet. denied).  The Texas Supreme Court has held that courts
must also decide whether it is appropriate to impose tort liability for alleged
violations and directed us to consider a multitude of factors, including:  whether the statute is the sole source of any
tort duty from the defendant to the plaintiff, or whether it merely supplies a
standard of conduct for an existing common-law duty; whether the statute puts
the public on notice by clearly defining the required conduct; whether the
statute would impose liability without fault, whether negligence per se would
result in ruinous damages disproportionate to the seriousness of the statutory
violation, particularly if the liability would fall on a broad and wide range
of collateral wrongdoers; and whether the plaintiff’s injury is a direct or
indirect result of the violation of the statute.  Perry v.
S.N., 973 S.W.2d 301, 308 (Tex. 1998). 
It is not necessary to decide this issue.