

**NUMBER 13-13-00220-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**TABATHA ELLIOTT,**                                                        **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                        **Appellee.**

**On appeal from the 319th District Court
of Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Longoria
Memorandum Opinion by Chief Justice Valdez**

A jury found appellant, Tabatha Elliot, guilty of manslaughter, *see* TEX. PENAL CODE

ANN. § 19.04 (West, Westlaw through 2013 3d C.S.), tampering with or fabricating

physical evidence, *see id.* § 37.09 (West, Westlaw through 2013 3d C.S.), and accident

involving personal injury or death, *see* TEX. TRANSP. CODE ANN. § 550.021 (West, Westlaw

through 2013 3d C.S.).  By four issues, which we have reorganized, appellant contends (1) the evidence was legally insufficient for a rational jury to convict her of manslaughter; (2) the trial court erred in allowing the State to introduce certain evidence concerning the situs of the accident on the basis that it constituted an improper expert or lay opinion and unfairly prejudiced her defense; (3) the trial court erred in not allowing appellant to cross-examine several State's witnesses on their personal driving habits to determine how an ordinary person would operate a vehicle; and (4) the trial court erred in denying her motion to suppress text messages found on appellant's company-issued phone under the Fourth Amendment.  We affirm.

## I.  Background[1]

On May 29, 2012, at approximately one o'clock in the morning, appellant was driving home in her Chrysler PT Cruiser with an intoxicated passenger after leaving a bar when she struck a pedestrian, Gilbert Reyna, who died as a result of the injuries he sustained.  At the time, Gilbert was pushing a bicycle on the side of the road.  He was accompanied by his brother, Jesse Reyna.  Jesse testified that he and Gilbert were walking on the shoulder of the road when, suddenly, a vehicle struck Gilbert; however, Jesse could not identify the vehicle nor its driver, since the driver continued driving without stopping and "a lot of dirt and dust" obstructed his view as the vehicle drove away.  When morning came, appellant's passenger informed investigating officers that appellant might have been involved in the accident.  Based on this tip, investigators made contact with

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it.  *See* TEX. R. APP. P. 47.4.

2

appellant, who admitted that she struck something on the road and continued driving without stopping. Appellant was then taken into custody.

During a police interview admitted into evidence, appellant acknowledged that she considered the possibility that she had hit a person, but consistently stated that she thought it was an animal or a sign. She admitted that she had been reaching down to pick up a cigarette when, suddenly, she heard something hit her windshield. She admitted that she had been drinking at a bar earlier that night with her passenger, that she was tired at the time of the accident, that her intoxicated passenger was distracting her by being loud, and that she had to turn up the radio to drown him out. Appellant first stated that she went straight to sleep after she arrived home, but later revealed that her passenger drove her back to the scene. She stated that the police had already arrived when they returned to the scene and that, although she wanted to talk to the authorities, her passenger persuaded her to wait until the morning.

Vivian Sanchez, an inmate who was in jail with appellant after her arrest, testified that appellant admitted that she had consumed two shots of tequila and two beers on the night of the accident and that, after the accident, she attempted to wash blood off her car with Clorox and water. Regarding appellant's reason for not stopping, Sanchez testified:

> [Appellant] said, "I was too drunk to go back. I'm not going to go back. Do you think I'm going to go back and get arrested? No." And then [appellant] was upset because whoever she was with, I don't know the name, I don't recall the name, that person was yelling for her to go back. And she said, "No. I'm going to wash this off, and I've got to get it done tonight." And she did.

The police investigation revealed that, a few hours after the accident, appellant replaced her broken windshield with a new one, and that there were white marks on appellant's car indicative that someone had tried to clean it. The lead investigator on the

3

case testified that he elected not to request a blood sample from appellant to determine alcohol content because too much time had elapsed between the time of the accident and his initial contact with her to get an accurate result.

The evidence showed that on the night of the hit-and-run, Gilbert was wearing a black shirt and khaki shorts; his bicycle was dark and chrome in color; and there was "a lot of light" in the area where the accident occurred. According to Jesse, lights from a nearby building provided additional visibility. Officers who collected evidence at the accident scene testified that, although they were able to recover Gilbert's bicycle, they could not locate a bicycle reflector at the scene; however, Jesse testified that the bicycle was equipped with a reflector underneath the seat prior to the accident.

The jury found appellant guilty and assessed punishment at fifteen years in prison for manslaughter, ten years in prison for tampering with or fabricating physical evidence, and ten years in prison for accident involving personal injury or death, with the sentences to run concurrently. The jury also assessed a $10,000 fine on each of the three counts. This appeal followed.

## II. Discussion

### A. Sufficiency of the Evidence

By her fourth issue, appellant contends the evidence was insufficient for a rational jury to convict her of manslaughter.[2] Specifically, appellant contends that no evidence

---

[2] Appellant's fourth issue asserts that the trial court erred in denying her motion for a directed verdict. A challenge to the denial of a motion for directed verdict is essentially a challenge to the legal sufficiency of the evidence. *See Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993). Thus, we review appellant's fourth issue as a challenge to the legal sufficiency of the evidence to support her conviction.

4

was presented that she "recklessly" caused Gilbert's death.  *See* TEX. PENAL CODE ANN. § 19.04*.*

We conduct our sufficiency review by applying the *Jackson v. Virginia* standard of review.  *See Brooks v. State*, 323 S.W.3d 893, 906 (Tex. Crim. App. 2010) (plurality op.).  Under this standard, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Brooks*, 323 S.W.3d at 902 n.19.  The jury is the "exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence."  *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  The standard for reviewing the sufficiency of the evidence is the same for both direct and circumstantial evidence. *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge.  *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  A hypothetically correct jury charge is one that "sets out the law, is authorized by the indictment, does not unnecessarily increase the state's burden of proof or unnecessarily restrict the state's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

A person commits manslaughter if she recklessly causes the death of an individual. *See* TEX. PENAL. CODE ANN. § 19.04(a).  A person acts recklessly with respect to the result of her conduct when she is aware of, but consciously disregards, a substantial and unjustifiable risk that the result will occur.  *Id.* § 6.03(c) (West, Westlaw through 2013 3d

5

C.S.). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all circumstances as viewed from the actor's standpoint. *Id.*; Garza *v. State*, 50 S .W.3d 559, 564 (Tex. App.—Houston [1st Dist.] 2001, no pet.). "[P]roof of a culpable mental state generally relies on circumstantial evidence." *Lopez v. State*, 630 S.W.2d 936, 942 (Tex. Crim. App. [Panel Op.] 1982) (quoting *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. [Panel Op.] 1978)). A culpable mental state may be inferred from the defendant's acts, words, and conduct. *Dues v. State*, 634 S.W.2d 304, 306 (Tex. Crim. App. 1982). "At the heart of reckless conduct is conscious disregard of the risk created by the actor's conduct." *Lewis v. State*, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975). Recklessness can be applied generally to the act of driving. *See Porter v. State*, 969 S.W.2d 60, 63 (Tex. App.—Austin 1998, pet. ref'd).[3] In a manslaughter case, the jury is not required to find that a defendant was aware of the specific risk of the victim's death to find recklessness. *See Trepanier v. State*, 940 S.W.2d 827, 829 (Tex. App.—Austin, 1997 pet. ref'd).

Appellant challenges the sufficiency of the evidence as to the mental state element of manslaughter requiring the State to prove that she recklessly caused Gilbert's death.[4]

---

[3] *See also Aliff v. State*, 627 S.W.2d 166, 172 (Tex. Crim. App. 1982) (finding recklessness was shown where defendant operated motor vehicle at over 100 miles per hour, passed a car on the shoulder, locked his brakes, and skidded into a collision with another car); *Trepanier v. State*, 940 S.W.2d 827, 830 (Tex. App.—Austin, 1997, pet. ref'd) (determining driver was reckless when he attempted to illegally pass traffic on right shoulder of the road); *Arellano v. State*, 54 S.W.3d 391, 393 (Tex. App.—Waco 2001, pet. ref'd) (finding reckless element satisfied where there were visible signs indicating reduced speed ahead and skid marks showed defendant was driving at an excessive speed under the circumstances); *Bannister v. State*, 761 S.W.2d 849, 850 (Tex. App.—Beaumont 1988, no pet.) (holding that recklessness was shown where truck driver put his truck in reverse during heavy fog on a highway and struck driver proceeding legally in the same lane).

[4] Appellant does not challenge the sufficiency of the evidence on any other element to support her conviction for manslaughter.

6

The State's manslaughter indictment alleged that appellant was reckless "by failing to control her motor vehicle, [failing] to keep a proper lookout, [failing] to maintain a single lane of travel, [failing] to keep her vehicle on the roadway, and by driving her motor vehicle onto the shoulder of the roadway." Here, by her own admission, appellant was voluntarily intoxicated and distracted at the time of the accident. Appellant admitted that she consumed two shots of tequila and two beers at a bar before the accident. She also admitted that she was "drunk," tired, distracted by her passenger, and reaching for a cigarette in her car moments before she struck Gilbert. Appellant's admission that she was intoxicated, fatigued, and distracted on the road demonstrated to a rational jury that she consciously created a substantial and unjustifiable risk of danger to others. *See Rodriguez v. State*, 834 S.W.2d 488, 490 (Tex. App.—Corpus Christi 1992, no pet.) (holding evidence legally sufficient based on appellant's statement that she took the corner "too fast," which indicated that she was aware of the risk created by her conduct); *see also Rubio v. State*, 203 S.W.3d 448, 452 (Tex. App.—El Paso 2006, pet. ref'd) (observing that driving under the influence of alcohol can be used to show conscious disregard of substantial risk). It does not matter that appellant may not have perceived the specific risk that her conduct would cause another person to die; what matters is that she consciously created an unjustified risk of danger to others. *See id.*

Moreover, the jury could have reasonably inferred that nothing prevented appellant from noticing Gilbert on the side of the road before she struck him. The jury heard evidence that (1) the bicycle Gilbert pushed was partially chrome in color and equipped with a reflector underneath the seat, (2) lights from a nearby building illuminated the area, (3) Gilbert was wearing khaki shorts, and (4) Gilbert was walking on the shoulder of the

7

road.[5] Although Gilbert was reasonably visible to drivers on the road, there was no evidence that appellant made any attempt to avoid the accident; for instance, Jesse testified that he did not hear the sound of any squealing tires before appellant struck Gilbert, and investigators could not locate any skid marks at the scene. Furthermore, appellant admitted that she was searching for a cigarette in her car when, suddenly, she hit something on the road. Appellant's admission that she was distracted on the road could have indicated to a rational jury that the accident was not due to poor visibility conditions, as appellant argued at trial; rather, it was due to her failure to keep a proper lookout and maintain a single lane, as the State alleged in its indictment.

Finally, the jury could have inferred appellant's recklessness from her furtive conduct after the accident that demonstrated her consciousness of guilt. *See Cockrum v. State*, 758 S.W.2d 577, 581 (Tex. Crim. App. 1988) (holding that the defendant's demeanor after the crime, in the form or nervous or furtive behavior, may indicate guilty knowledge and be used as evidence of guilt). The evidence showed that appellant continued driving after she hit Gilbert, that she made no attempt to stop, and that she went to an auto glass shop to replace her broken windshield as soon as the morning came. The investigating officer who made initial contact with appellant noticed white marks on the surface of appellant's car, which appeared to the officer as though someone had tried to remove something from the surface. Appellant further showed a

---

[5] *See Lopez v. State*, 731 S.W.2d 682, 684 (Tex. App.—Houston [1st Dist.] 1987) (holding recklessness shown where defendant struck a pedestrian on the shoulder of the road after failing to maintain a single lane on the road, and where the section of the road on which accident occurred was straight and there was nothing that would obstruct a driver's view), *rev'd on other grounds*, 779 S.W.2d 411 (Tex. Crim. App. 1989); *see also Manning v. State*, 84 S.W.3d 15, 20–21 (Tex. App.—Texarkana 2002) (determining recklessness element was satisfied where the defendant swerved when approaching a lane of stopped traffic with visible warning signs of road construction, and never slowed down or applied his brakes), *rev'd on other grounds*, 114 S.W.3d 922 (Tex. Crim. App. 2003).

consciousness of guilt when she told Sanchez that she was "too drunk" to remain at the accident scene, that she fled to avoid being arrested, and that she washed blood off her car with Clorox and water after the accident.

Viewed in the light most favorable to the prosecution, the evidence showed that appellant allowed her vehicle to veer onto the shoulder of the road as a result of a combination of factors that, taken together, indicated she consciously created and disregarded a substantial and unjustified risk of harm to the people around her. Because we do not believe it was unreasonable for the jury to find the element of recklessness beyond a reasonable doubt, we overrule her fourth issue.

## B. Evidentiary Rulings

By her first and third issues, appellant contends that the trial court made improper evidentiary rulings that prejudiced her ability to present a defense.

### a. Area of Impact (State's Exhibit Number 9)

By her first issue, appellant contends that the trial court erred in allowing the State to introduce a diagram of the accident scene into evidence. Specifically, appellant complains of a representation in the State's diagram, which indicated that her car struck Gilbert in an area that was situated exclusively within the shoulder of the road, referred to in the diagram as "AOI" or "area of impact." Appellant asserts the area of impact designation should not have been admitted into evidence on the basis that (1) the officers who investigated the accident scene were not proper lay witnesses under Texas Rule of Evidence 701 because they did not see the accident occur and, therefore, could not render an opinion about the area within which the impact could have occurred; (2) the officers were not qualified as experts under Rule 702 to render an opinion about where

9

the impact could have occurred; and (3) the probative value of the evidence concerning area of impact was substantially outweighed by the danger that it could mislead the jury and unfairly prejudiced her case under Rule 403.

### 1. Pertinent Facts

The trial court held a hearing outside the presence of the jury to determine the admissibility of the area of impact designation in the State's diagram. Two officers testified about how they determined the area of impact. Regarding the area of impact, the officers testified to the following: (1) they based the area of impact on the first piece of debris they came upon on the right side of the road; (2) Jesse, who was present for the accident, did not know where the impact actually occurred and did not aid the officers in making the determination; (3) the area of impact was not determined by utilizing any kind of scientific theory or principle; (4) the officers were not experts in the field of accident reconstruction or the like; and (5) it is common in the investigation of an accident involving a fatal hit-and-run of a pedestrian with no witnesses to determine the area of impact by reviewing the spread of debris found on the road. The officers also testified that "area of impact" is not the same as "point of impact." The "area of impact" refers to the general area within which the "point of impact" is believed to have occurred. The officers testified that it was not possible to identify a point of impact in this case. On cross-examination, both officers testified that the diagram may not accurately depict the actual size of the area of impact; they testified that, although the diagram limited the area of impact to the shoulder of the road, the actual area could be six to ten feet wider than it is shown in the diagram and could have extended onto the road.

10

After hearing all of this testimony, the trial court overruled appellant's objections and allowed the State to introduce the diagram into evidence; however, the court provided the following cautionary instruction to the State:

> Okay, I'm going to let [the diagram depicting the area of impact into evidence] as long as the State understands, that the State needs to have sufficient explanation of what it is and not mislead the jury that it's something other than what it is. It's not scientific evidence, it's not based on any sort of scientific determination, and also that the circle that's drawn in the shoulder is not necessarily . . . even accurate. Both officers already testified that the area of impact could be much greater than [it is depicted in the diagram] and could extend out into the roadway.

### 2. Analysis

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). A trial court does not abuse its discretion if its decision falls within the zone of reasonable disagreement. *See Walters v. State*, 247 S.W.2d 204, 217 (Tex. Crim. App. 2007). We will sustain the trial court's decision if that decision is correct on any theory of law applicable to the case. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

Generally, "observations which do not require significant expertise to interpret and which are not based on a scientific theory can be admitted as lay opinions if the requirements of [Texas Rule of Evidence] 701 are met." *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002). Under Rule 701, a lay witness can testify in the form of an opinion if the opinion is (a) rationally based on his or her perceptions and (b) helpful to the clear understanding of the testimony or the determination of a fact in issue. *See* TEX. R. EVID. 701; *see also Fairow v. State*, 943 S.W.2d 895, 898 (Tex. Crim. App. 1997).

The first requirement for admissibility, perception, refers to a "witness's interpretation of information acquired through his or her own senses or experiences at the

11

time of the event (i.e., things the witness saw, heard, smelled, touched, felt, or tasted)." *Osbourn*, 92 S.W.3d at 535. Thus, a witness's testimony can include opinions, beliefs, or inferences "as long as they are drawn from his or her own experiences or observations." *Id.* Once the perception requirement is satisfied, the trial court must then determine if the opinion is "rationally based on that perception. An opinion is rationally based on perception if it is an opinion that a reasonable person could draw under the circumstances." *Fairow*, 943 S.W.2d at 899–900.

The second requirement for admissibility under Rule 701 is that the opinion must be "helpful to the trier of fact to either understand the witness's testimony or to determine a fact in issue." *Id.* There is no bright line indicating when an opinion is helpful, but the court of criminal appeals has explained that "general evidentiary considerations of relevance and balancing will invariably assist the trial judge in making his determination." *Id.* For example, "a trial court properly acting within its discretion may determine that the confusing, misleading or cumulative nature of an opinion renders it not helpful to the trier of fact and thus improper under Rule 701." *Id.* at 900. Even if a lay opinion meets both requirements under Rule 701, a trial court has discretion under Rule 403 to exclude the opinion if its probative value is substantially outweighed by a danger of unfair prejudice or misleads the jury. *See* TEX. R. EVID. 403.

Here, the trial court could have reasonably concluded that the officers' opinion as to the area of impact was not based on a scientific theory and did not require significant expertise to interpret because the officers based their opinion on a review of the spread of debris found on the road, which they personally witnessed. *See Osbourn*, 92 S.W.3d at 537; *see also Brown v. State*, 303 S.W.3d 310, 320 (Tex. App.—Tyler 2009, pet. ref'd)

12

(holding that officer did not require expert qualification to render an opinion about where the vehicle accident occurred because he observed the evidence at the accident scene first hand and formed his opinion, in part, on a review of the spread of debris on the road). Thus, following *Osbourn,* the diagram limiting the area of impact to the shoulder of the road was admissible if it met the requirements of Rule 701 — i.e., a reasonable person under the circumstances could draw the same conclusion regarding the area of impact, and the diagram was helpful to the jury. *Osbourn*, 92 S.W.3d at 537; *Fairow*, 943 S.W.2d at 899–900.

It appears that the trial court, after hearing the testimony of the officers, determined that the diagram's depiction of the area of impact was not necessarily reflective of the officers' opinion concerning the actual size of the area of impact; although the diagram limited the area of impact to the shoulder of the road, the officers testified that the actual area of impact was not necessarily limited to the shoulder and could have extended out onto the roadway. Although the trial court acknowledged that the diagram's depiction of the area of impact was "not necessarily . . . accurate," the trial court reasonably determined that this evidence would be helpful to the jury as long as the State, in presenting the evidence, "sufficient[ly] explain[ed]" the inaccuracy and did not mislead the jury into believing that the area of impact was limited to the shoulder of the road. Our review of the record indicates that the State heeded the trial court's curative instruction by presenting the diagram in a manner that accurately illustrated the officers' testimony concerning the area of impact. Considering the manner in which the jury received the

evidence at issue, we cannot conclude that the trial court abused its discretion in ruling the way it did.[6]  *See Fairow*, 943 S.W.2d at 899–900.

Even if we were to assume that the trial court erred in admitting the complained–of portion of the diagram into evidence, we would nevertheless be compelled to conclude that the error, if any, was harmless.  We review the erroneous admission of evidence under a harm analysis for nonconstitutional error.  *See Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007).  Under this analysis, we must disregard a nonconstitutional error that does not affect the defendant's substantial rights.  *See* TEX. R. APP. P. 44.2(b).  The erroneous admission of evidence does not affect substantial rights if this Court, "after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect."  *See Solomon v. State,* 49 S.W.3d 356, 365 (Tex. Crim. App. 2001).  In making this determination, we consider "everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case."  *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).  We also consider other factors, including jury instructions, the State's theory, any defensive theories, and closing arguments.  *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

After examining the record as a whole, we have a fair assurance that the diagram limiting the area of impact to the shoulder of the road did not influence the jury.  The record shows the State heeded the trial court's admonishment to not mislead the jury when presenting the evidence concerning area of impact; none of the officers on direct

---

[6] For the same reason, we find the trial court did not abuse its discretion in ruling in favor of admissibility under Rule 403.

14

examination testified that their determination of the area of impact was based on a scientific principle or theory, and they were candid about their lack of expertise in any relevant field. *See Brown*, 303 S.W.3d at 321 (concluding that any error in admitting an improper lay witness opinion concerning the situs of the vehicle accident was harmless because the witness was candid about the limitations of his training in accident investigation, and he did not profess to have more training and experience than he actually possessed). Furthermore, the State, in its closing argument to the jury, made no mention of the area of impact in the diagram and, thus, did not emphasize the alleged error—a consideration which weighs against a finding of harm. *See Motilla,* 78 S.W.3d at 356 (observing that the State's emphasis of the error at trial is a factor to be considered in harm analysis); *King v. State*, 953 S.W.2d 266, 272 (Tex. Crim. App. 1997) (same). Moreover, the officers testified on cross-examination that the area of impact could extend beyond the shoulder and onto the roadway, and they even went so far as to edit the State's previously introduced diagram to accurately depict the size of the area of impact; the record reflects that both officers, using a pen on the witness stand, drew a wider circle on an identical copy of the State's diagram, which expanded the area of impact beyond the shoulder and onto the roadway. These edited versions of the State's diagram were introduced into evidence as defense exhibits eight and eleven for the jury to review.

In finding harmless error, we recognize that appellant's defensive theory involved refuting the State's evidence that she drove on the shoulder of the road by attempting to demonstrate that Gilbert was walking in her lane of travel at the time of the accident. We also recognize that the State's diagram, which limited the area of impact to the shoulder of the road, was at odds with appellant's defensive theory. However, even without the

State's diagram in evidence, the jurors were presented with other evidence indicating appellant struck Gilbert on the shoulder; for instance, Jesse testified that Gilbert stayed on the shoulder of the road at all times during their walk home. Additionally, appellant, in her video interview, stated that she believed she might have hit a sign, which, by way of reasonable inference, meant the impact did not occur in her lane of travel unless there was a sign in her lane of travel, and there was no evidence of that. Thus, while the State's diagram was inconsistent with appellant's defensive theory, the jurors could have reasonably rejected her theory based on other testimony indicating she struck Gilbert by recklessly driving on the shoulder of the road. *See Anguiano v. State*, 774 S.W.2d 344, 347 (Tex. App.—Houston [14th Dist.] 1989, no pet.) (finding error was harmless because "there was other testimony [other than the erroneously admitted testimony] upon which the jury could reach its own determination"). Appellant's first issue is overruled.

### b. Personal Driving Experiences of Witnesses

By her third issue, appellant contends the trial court erred in not allowing her to question certain witnesses about their personal driving habits and experiences on the road. Specifically, appellant asserts she had a constitutional right to poll several witnesses, who were all police officers, to determine whether they had ever divided their attention while driving on the road in order to change the radio station, use a cell phone, turn to talk to a passenger, or reach for a dropped item.[7] In support of this proposition,

---

[7] The purpose of asking these questions, according to appellant's offer of proof at trial, was to challenge the State's evidence of recklessness by showing that ordinary people might get distracted in various ways while driving; that such distractions are not a gross deviation from the standard of care that ordinary people would exercise; and that, if anything, it was appellant's normal distracted state that probably caused the accident to occur. Because the element of recklessness requires a gross deviation from the standard of care that ordinary people would exercise, appellant argued that she should be able to poll State's witnesses with questions to discover ordinary driving habits.

16

appellant cites the cases of *In re Winship*, 397 U.S. 358 (1970) and *Crocker v. State*, 573 S.W.2d 190 (Tex. Crim. App. 1978), and argues the trial court's evidentiary rulings were contrary to those cases. However, *In re Winship* and *Crocker* concern the constitutional standard of proof required to secure a juvenile or adult criminal conviction; they do not concern evidentiary rulings at the trial level involving cross-examination of witnesses, and appellant does not adequately explain, nor can we discern, how they apply to this case. Appellant has failed to provide a clear and concise argument with citations to the record and authority to support her third issue; it is therefore inadequately briefed for our review. *See* TEX. R. APP. P. 38.1(i).

Nevertheless, we conclude that appellant's argument is without merit. A review of the record indicates that, prior to the evidentiary rulings made the basis of this issue, appellant had already polled not one, but two State's witnesses with questions identical to the ones she sought to ask subsequent witnesses.[8] The trial court has broad discretion

---

[8] Appellant asked one witness the following questions, the substance of which is identical to the questions she posed in her offer of proof to the trial court:

[Trial Counsel]: When you operate a motor vehicle, are you changing the radio?

[Sergeant Kronk]: Yes, sir.

[Trial Counsel]: When you change the radio sometimes you look down for a second, right?

[Sergeant Kronk]: Yes, sir.

[Trial Counsel]: Sometimes you talk—there will be someone in your car next to you, right?

[Sergeant Kronk]: Yes, sir.

[Trial Counsel]: You look over and talk to them, right?

[Sergeant Kronk]: Yes, sir.

[Trial Counsel]: You've done that before, right?

[Sergeant Kronk]: Certainly.

[Trial Counsel]: You have a cell phone?

17

to impose reasonable limits on cross-examination to prevent the injection of cumulative evidence. *See Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000) (citing *Lagrone v. State*, 942 S.W.2d 602, 613 (Tex. Crim. App. 1997)); *see also* TEX. R. EVID. 403 (stating that even relevant evidence may be excluded if the trial court determines that "its probative value is substantially outweighed by . . . needless presentation of cumulative evidence."). Thus, even assuming the questions appellant sought to ask subsequent witnesses were relevant to the case, the trial court acted within its discretion to avoid the presentation of cumulative evidence. We therefore overrule appellant's third issue.

## C. Motion to Suppress

By her second issue, appellant contends the trial court erred in denying her motion to suppress certain text messages found on appellant's company-issued cell phone that police obtained after appellant's employer, who is also appellant's mother, provided written permission to search the phone. Specifically, appellant, citing *State v. Granville*, argues she had a legitimate and reasonable expectation of privacy in the contents of her cell phone. 423 S.W.3d 399 (Tex. Crim. App. 2014) (holding a defendant normally has a

---

[Sergeant Kronk]: Yes, I do.

[Trial Counsel]: You've answered your cell phone while you're driving before?

[Sergeant Kronk]: Yes, I have.

[Trial Counsel]: And there's been times you might have dropped an item while you're driving, right? I don't mean outside the window, I mean inside the car?

[Sergeant Kronk]: I'm sure there is.

[Trial Counsel]: And you're reached down to pick up an item, right?

[Sergeant Kronk]: Once or twice, perhaps.

[Trial Counsel]: You've done all of these things, haven't you?

[Sergeant Kronk]: Yes, sir.

reasonable expectation of privacy in his or her cellular telephone that is stored temporarily in a jail property room following arrest); *Riley v. California*, ___U.S. ___, 134 S. Ct. 2473 (2014) (holding police generally may not, without a warrant, search digital information on a cell phone seized from a person who has been arrested). The State responds that appellant did not reasonably expect privacy in the contents of her cell phone under the Fourth Amendment, and, even if she did, appellant's employer had actual or apparent authority to consent.

**1. Pertinent Facts**

The trial court held a hearing on appellant's oral motion to suppress certain text messages that police obtained from appellant's company-issued cell phone. At the hearing, Teresa Ann Butler, appellant's employer and mother, testified that she owns a transportation company, that appellant worked for the company, and that appellant was issued a cell phone as part of her employment. Butler testified to the following facts regarding the nature of appellant's use of this cell phone:

[Defense]:      Was the phone for the exclusive use of [appellant]?

[Butler]:       Yes.

[Defense]:      Did anybody else use that phone?

[Butler]:       No.

[Defense]:      Okay. Was she authorized to use [the phone] for her personal use as well?

[Butler]:       Yes.

[Defense]:      Okay. Did the company have any written protocols or requirements for the use of that phone?

[Butler]:       No.

19

[Defense]:          Did the company do any searches of that phone or checks of the actual physical phone, itself, at any time?

[Butler]:           No.

[Defense]:          Was that something that was not any type of overt policy for the company to regularly check that phone?

[Butler]:           No.

[Defense]:          You, as the owner of the company, did you consider that to be [appellant's] phone?

[Butler]:           Yes.

On cross-examination, the State elicited testimony from Butler that the phone was purchased with company funds and that appellant would not be able to make use of it if the company stopped paying the phone bill. After hearing Butler's testimony, the trial court asked the prosecutor whether the police obtained consent from any party to search the phone. The prosecutor responded that Sergeant Schwartz, a State's witness, would be able to speak directly to the issue of consent, but that he was not scheduled to testify until later in the trial. Appellant's counsel then proposed that the trial court reserve ruling on the motion to suppress until after the State adduced additional evidence from Sergeant Schwartz on the issue of consent. The trial court took the consent issue under advisement and reserved ruling on appellant's suppression motion.

Later at trial, immediately prior to Sergeant Schwartz's testimony, the trial court asked the State if it had additional evidence to present on the issue of consent, and the State responded, "[w]e talked to [Sergeant Schwartz], Judge. He said that he obtained consent from [Butler] and never asked [for consent] from [appellant]." The trial court then ruled the cell phone messages were admissible. After the trial court ruled on appellant's

20

motion to suppress, defense counsel asked the State to stipulate that Sergeant Schwartz never obtained consent from appellant to search her phone. The State did not agree to the stipulation at that time but indicated that it would do so "after talking to [Sergeant Schwartz]." Trial on the merits recommenced with Sergeant Schwartz testifying to the following facts regarding consent, which drew no objection from the defense:

> When I took [appellant] into custody, I — the phone was given to [Butler]. I contacted [Butler] to see about getting the phone so I could search it. I was able to get permission from [Butler] since the phone is paid for by [Butler]. [Butler] told me it's a company phone. So she gave me consent to — a handwritten consent to search the phone for text messages.

Defense counsel also cross-examined Sergeant Schwartz on the consent issue. Later at trial, when the State sought to introduce the content of these text messages into evidence, appellant objected on Fourth Amendment grounds. The trial court overruled appellant's objection, and admitted, as State's Exhibit 33, the text messages into evidence. Included in State's Exhibit 33 is a handwritten letter, signed by Butler and dated May 30, 2012, in which Butler expressly grants Sergeant Schwartz permission to "download any text or voicemail messages" from the cell phone. In this consent letter, Butler described the phone as "one of my company cell phones." The State also introduced appellant's May 29, 2012 video interview with Sergeant Schwartz, wherein appellant referred to her phone as a "company phone."

**2. Applicable Law and Standard of Review**

The Fourth Amendment to the United States Constitution provides protection from "unreasonable" searches and seizures by government officials. *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010). A search conducted without a warrant is generally deemed unreasonable. *Id.* The general warrant requirement yields to several

well-established exceptions. *Id.* One exception applies when a person voluntarily consents to a search. *Id.* We examine the totality of the circumstances to determine whether it is reasonable under the Fourth Amendment for an officer to rely on the consent of another person to justify a warrantless search of property. *Id.*

A third party may consent to a search of the property of another if the third party has actual authority over the thing to be searched. *Id.* The property interests of the parties are relevant, but not dispositive, to this determination. *Id.* Common authority is shown by the parties' joint access, mutual use, or control over the property for most purposes, so that "it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Id.* at 560–61 (quoting *United States v. Matlock*, 415 U.S. 164, 172 (1974)). When a defendant assumes the risk that another may permit a search of shared property, he may not complain of that search under the Fourth Amendment. *Id.* at 561.

A third party's actual authority over the property is not a prerequisite for a valid consensual search. *Id.* Our law also recognizes that, in some circumstances, a valid consensual search may occur when a third party has "apparent authority" over the property. *Id.* The Texas Court of Criminal Appeals recently explained:

> [W]hen an officer reasonably, though erroneously, believes that a third party purporting to provide consent has actual authority over the place or thing to be searched, apparent authority exists and the purported consent from the third party can serve to make the search reasonable. Even if the third party lacks actual authority to consent—that is, he does not actually have joint access to or control over the premises—his purported consent can nevertheless validate a search if it reasonably appears to the police that he does in fact have authority.

22

*Id.* at 561. Apparent authority is judged under an objective standard: "would the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?" *Limon v. State*, 340 S.W.3d 753, 756 (Tex. Crim. App. 2011) (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990)).

It is the State's burden to show by a preponderance of the evidence that the person who consented to the search had actual or apparent authority to consent. *Hubert*, 312 S.W.3d at 561–62. Thus, the State has the burden to show that a third party either had mutual access to and control over the property that was searched (i.e., actual authority), or that the officer conducting the search reasonably believed, based on facts known to him at the time, that the consenting party had authority over the property (i.e., apparent authority). *Id.*

Whether a search was reasonable under the Fourth Amendment is a mixed question of law and fact. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). We review de novo the issue of whether a third party had actual or apparent authority to consent to a search of another's property because this inquiry involves a mixed question of law and fact. *Hubert*, 312 S.W.3d at 559-60. However, we must defer to the trial court on determinations of credibility and historical fact. *Id.* When the trial court does not make findings of fact, we view the evidence in the light most favorable to the trial court's rulings and assume that the trial court resolved any issues of historical fact or credibility in a manner that is consistent with its ultimate ruling. *Id.* at 560.

In reviewing a trial court's ruling on a motion to suppress, we generally consider only evidence presented at the suppression hearing because the trial court based its ruling on it rather than evidence adduced later in trial. *See Rachal v. State*, 917 S.W.2d

23

799, 809 (Tex. Crim. App. 1996). However, when the parties "consensually relitigate" the suppression issue after the trial court's ruling on the suppression motion, our review is not limited to the evidence adduced at the suppression hearing, but also includes the relevant trial testimony and evidence. *Id.*

### 3. Discussion

As a threshold matter, we note that our review of the evidence is not limited to the evidence adduced at the suppression hearing because the record reflects that the parties consensually relitigated the suppression issue after the trial court ruled on appellant's motion to suppress. *See id.* As noted earlier, appellant sought a stipulation from the State on the issue of consent after the trial court had already denied her motion to suppress. The State did not agree to enter this stipulation until Sergeant Schwartz testified at trial, and, when Sergeant Schwartz did testify at trial, the defense cross-examined him on the consent issue. Thus, appellant elected to reopen the evidence after the trial court made its suppression ruling, and we accordingly also consider the evidence introduced at trial in our review of this issue. *See id.* (holding that when the State raises the suppression issue at trial, either without objection or with the defense's subsequent participation in the inquiry, the defendant is deemed to have elected to reopen the evidence, and the appellate court's review incorporates the relevant trial testimony and evidence).

Under the doctrine of apparent authority, even if Butler lacked actual authority to consent, her purported consent will validate the search at issue if it reasonably appeared to Sergeant Schwartz that Butler did in fact have authority. *See Hubert*, 312 S.W.3d at 561; *Davis v. State*, 93 S.W.3d 664, 668 (Tex. App.—Texarkana 2002, pet. ref'd) (observing that "it is arguable [whether the third-party consenter had] actual authority to

24

consent to a search. That is not, however, the operative question, because even when the facts do not support a finding of actual authority, a search is reasonable if the consent-giver *apparently* has actual authority.") (emphasis added). On May 29, 2012, during her video interview with Sergeant Schwartz, appellant described her phone as a "company phone." The next day, when Sergeant Schwartz sought consent from Butler to search the phone, Butler described it as "one of my company cell phones." Butler was also in possession of the phone at that time. *See Wilson v. State*, No. 04-02-00805, 2004 WL 624541 at *3 (Tex. App.—San Antonio Mar. 31, 2004, no pet.) (mem. op., not designated for publication) (holding apparent authority to consent to search vehicle was established where consent-giver asserted it was his vehicle and was in possession of it at time of search, even though it was not his vehicle). Under these circumstances, there was no ambiguity in the situation that should have given Sergeant Schwartz pause to doubt Butler's authority over the phone, an item that both appellant and Butler admittedly identified as a company phone. *See Corea v. State*, 52 S.W.3d 311, 317 (Tex. App.—Houston [1st Dist.2001], pet. ref'd) (noting that law enforcement officers should not be permitted to proceed when ambiguous circumstances exist that merit further inquiry into the consenting party's apparent claim of authority to allow the search); *State v. Krall*, No. 13-12-00469-CR, 2013 WL 6547388, at *5 (Tex. App.—Corpus Christi Aug. 1, 2013, no pet.) (mem. op., not designated for publication) (finding that defendant-passenger's statement that duffel bag belonged to him gave rise to "ambiguous circumstances" that should have raised a question in the mind of the officer as to whether the driver had actual authority to consent to a search of defendant-passenger's bag). Moreover, nothing in the record indicates that Butler, at the time she consented, told Sergeant Schwartz that the

25

phone was intended for appellant's exclusive use, as she had represented at the suppression hearing. Finally, there is no indication in the record that appellant prevented Butler or anyone else from viewing the contents of her phone—for example, by installing a password-protection feature—which would have alerted Sergeant Schwartz to question Butler's authority.

Having considered the arguments of the parties, we conclude that the trial court properly denied appellant's motion to suppress on the basis that Butler had apparent authority to consent to a police search of appellant's company-issued phone. *See Hubert*, 312 S.W.3d at 561. Based on the facts known to Sergeant Schwartz at the time of the search, it was reasonable for him to believe that Butler possessed authority to consent. *See id.*

**5. Harm**

Even if we were to decide that the trial court erred in admitting the text messages into evidence, we would find the error was harmless. Because the error, if any, impacted appellant's constitutional rights under the Fourth Amendment, we must determine whether the error was harmless beyond a reasonable doubt. *See Brown v. State*, 960 S.W.2d 265, 271 (Tex. App.—Corpus Christi 1997, no pet.) (observing that "[i]mproperly admitted evidence [impacting constitutional rights] does not call for reversal if the reviewing court determines beyond a reasonable doubt that admission of the evidence did not contribute to the conviction or punishment"); *see also* Tex. R. App. P. 44.2(a).

To analyze harm, we provide the following summary of the incriminating content found on appellant's phone and admitted into evidence: (1) a few hours after the accident, appellant texted Brian Welch, her passenger, that she passed by the scene and noticed

that a sign had been knocked down; (2) appellant referenced her broken windshield and indicated the need to replace it; (3) appellant texted Welch that she consumed only "one" drink on the night of the accident and then accused him of telling others she was "drunk," which Welch, in a subsequent responsive text to her, denied;[9] and (4) Welch texted appellant, "[D]ude you ran over and killed someone[.] [H]ere is the police report[.]"

A review of the record indicates that the jury heard the substantive equivalent of the incriminating text-message content through other admissible evidence and testimony at trial. For instance, during her video interview with Sergeant Schwartz, which was admitted at trial, appellant revealed that (1) she thought initially the object she hit might have been a sign; (2) she replaced her windshield the morning of the hit-and-run; (3) she consumed one vodka tonic at a bar before the accident occurred; and, (4) she received a text message from Brian Welch the morning of the accident, in which Welch advised her that he read a report on the internet about a hit-and-run in the area and asked if she believed the object she hit might have been a person. The jury also heard, through the testimony of Sanchez, appellant's admission that she consumed alcohol on the night of the accident, that she attempted to get rid of incriminating evidence, and that her reason for fleeing the scene was to avoid apprehension. Thus, the incriminating content found on appellant's phone and admitted into evidence was merely cumulative of what she told others after the accident. Accordingly, we conclude beyond a reasonable doubt that the admission of the text messages into evidence, even if error, did not contribute to appellant's conviction or punishment and was, therefore, harmless. *See Brown*, 960

---

[9] Appellant sent the following text message to Welch: "Why did [you] say [I] was drunk? [I] wasn't! [I] took ONE OF your vodka tonics, that wa[s] IT!"

27

S.W.2d at 272; *Coble v. State*, 330 S.W.3d 253, 286 (Tex. Crim. App. 2010). We overrule appellant's second issue.

### III.    Conclusion

We affirm appellant's conviction.

**/s/ Rogelio Valdez**
Rogelio Valdez
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
23rd day of April, 2015.